```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3    UNITED STATES OF AMERICA,          )
                                         )
 4                Plaintiff,             )
                                         )
 5     v.                                )  No. 19 CR 72
                                         )
 6    ANTONIO BROWN,                     )  Chicago, Illinois
                                         )  December 5, 2019
 7                Defendant.             )  2:00 p.m.

 8                  TRANSCRIPT OF PROCEEDINGS - SENTENCING
                    BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10    APPEARANCES:

11    For the Plaintiff:          HON. JOHN R. LAUSCH, JR.
                                  United States Attorney
12                                BY:  MR. DEVLIN N. SU
                                  Assistant United States Attorney
13                                219 South Dearborn Street
                                  Suite 500
14                                Chicago, Illinois  60604
                                  (312) 353-5300
15
      For the Defendant:          THEDFORD GARBER LAW
16                                BY:  MR. D'ANTHONY V. THEDFORD
                                  53 West Jackson Boulevard
17                                Suite 638
                                  Chicago, Illinois  60604
18                                (312) 614-0866

19

20

21

22

23

24

25
```

Nancy C. LaBella, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1224
Chicago, Illinois  60604
(312) 435-6890
NLaBella.ilnd@gmail.com

1     (Proceedings had in open court:)

2          THE CLERK:  19 CR 72-1, USA v. Brown.

3          MR. SU:  Good afternoon, your Honor.  Devlin Su for

4     the United States.

5          MR. THEDFORD:  Good afternoon, your Honor.  Tony

6     Thedford, T-h-e-d-f-o-r-d.  I represent Antonio Brown, who is

7     to my right.

8          PROBATION OFFICER:  Good afternoon, Judge.  Michael

9     Alper, U.S. Probation.

10          THE COURT:  Good afternoon, everyone.

11          Are we ready to proceed to sentencing?

12          MR. THEDFORD:  We are, Judge.

13          MR. SU:  Yes, your Honor.

14          THE COURT:  Mr. Brown, have you had an opportunity to

15     review the presentence investigation report with your

16     attorney?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Very well.  Any objections by either side

19     to the presentence investigation report, modifications?

20          MR. THEDFORD:  There are no objections as to

21     accuracy, Judge.

22          MR. SU:  No, your Honor.

23          THE COURT:  Very well.  The Court adopts then the

24     presentence investigation report without modification, to

25     include the calculation of the total offense level of 19,

1    Criminal History Category II, and a sentencing range of 33 to

2    41 months.

3             I'll hear the government with respect to sentencing.

4             MR. SU:  Yes, your Honor.  The government recommends

5    a sentence within the 33- to 41-month range.

6             With respect to the nature and circumstances of the

7    offense, your Honor, this isn't a case involving an elderly

8    felon who has a six-shot revolver in his nightstand for

9    personal protection.  This is a defendant affirmatively

10   packing an extraordinary amount of firepower onto the streets

11   of Chicago.  On the night of his arrest, the defendant was a

12   convicted felon who was found with a Glock pistol that had a

13   31-round capacity extended -- extended-capacity magazine

14   attached to it.  That magazine was loaded with 19 live rounds.

15            And evidently 19 rounds wasn't enough for the

16   defendant because he had with him another extended-capacity

17   drum magazine.  Now, you've seen pictures of these drum

18   magazines in the government's version.  They essentially look

19   like miniature versions of the circular magazine found in an

20   Al Capone Tommy gun.  But what the defendant had with him was

21   one that could hold 50 bullets, and he -- that magazine was

22   found loaded with 42 live rounds.

23            So the defendant had with him a semiautomatic pistol

24   capable of firing 61 bullets in total, with the only delay in

25   firing being the amount of time it would take to pull out one

1    magazine and put in the other.  That gun was extra dangerous,

2    your Honor.

3          And even if he weren't a convicted felon, there was

4    just no legitimate purpose for him to be carrying that gun

5    with 61 bullets onto the streets of Chicago late at night.

6    Nobody carries 61 rounds of ammunition in that manner for

7    personal protection or for target shooting or for any

8    legitimate purpose.

9          The only possible purpose is to be able to rain down

10   a large amount of bullets in a short amount of time.  And

11   that's the risk the defendant knowingly posed to the people in

12   this community when he decided to tote that gun with him on a

13   joyride in a stolen car that night.

14         This wasn't also some spur-of-the-moment, just one-

15   time, split-second mistake, never again to be repeated.  As --

16   you've seen photos that have been reproduced in the

17   government's version, your Honor, Exhibit A as well.  These

18   are photos and videos of the defendant holding and brandishing

19   weapons, illegal guns, illegally carrying these guns, many

20   armed with laser sights, many armed with the same type of

21   extended-capacity drum magazine that he was found with during

22   his arrest.  In each one, he's pointing them at the viewer,

23   pointing them sideways, again, illustrating the extent to

24   which he views these guns as offensive weapons without any

25   legitimate or lawful purpose.

1    To be clear, your Honor, I'm not asking you to punish

2  him for exercising his First Amendment rights to rap about

3  guns.  What I am asking your Honor to do is to hold him

4  accountable for making the repeated choice time and time again

5  as a convicted felon to possess, carry, and brandish these

6  extra dangerous weapons.

7    Turning to his history and characteristics, your

8  Honor, they show that he's exactly the type of person who

9  should not be carrying a gun.  He already has a prior

10  conviction for violent crime in his background, which is an

11  attempted armed robbery.  It involved the use of a weapon to

12  try to rob a nail salon.  He was sentenced to eight years in

13  prison for that case.  And just seven months after he was

14  discharged from prison, he turned around and committed this

15  crime.  It shows that he has resistance to rehabilitation.  He

16  was not a changed man who had learned from this mistake.

17    And even if his prior conviction and prior prison

18  time were not enough to have deterred him, certainly his

19  personal characteristics should.

20    This is a person who has tragically lost two siblings

21  to murder; who has been personally shot seven times.  He

22  unfortunately knows all too well, probably more than any of us

23  in this room, the dangers of gun violence, and suffered them,

24  which makes it all the more inexcusable that he would increase

25  the risk to others of gun violence by illegally toting this

1  amount of firepower onto the streets of Chicago, by

2  brandishing those weapons in those rap videos.  If all that

3  tragedy just wasn't enough to teach him that living this

4  gun-filled lifestyle is acceptable, that none of that behavior

5  is acceptable, then a significant sentence from your Honor is

6  necessary now.

7          With respect to the other 3553(a) factors, it's clear

8  there's a great need for specific deterrence here.  If an

9  eight-year sentence in IDOC custody was not enough to teach

10  him to respect the firearms laws of the United States, to

11  teach him to not commit any more gun-related offenses, then a

12  significant sentence now is necessary.

13          Your Honor's sentence also needs to send a strong

14  message to anyone who wishes -- or who might wish to follow in

15  his footsteps, that this type of behavior, this type of

16  illegal firearm possession, is just not acceptable.  To have

17  any hope of combating the gun epidemic -- the gun violence

18  epidemic in the city of this district, a significant sentence

19  needs to be part of the solution in order to change the

20  calculus and make it just not worth it for anyone to carry a

21  gun illegally at any time.

22          On the flip side, your Honor, a below-guideline

23  sentence in this case would represent such a marked decrease

24  from the eight years in IDOC custody to which he's already

25  been sentenced and which clearly did not work and that would

1   not carry any of that same messaging -- the necessary

2   messaging either to the community or to this defendant.

3          And so for those reasons, your Honor, we'd ask for a

4   sentence within the range of 33 to 41 months.

5          THE COURT:  Counsel.

6          MR. THEDFORD:  Thank you, your Honor.

7          Your Honor, the defendant largely agrees with the

8   government.  What he did on that night in September of 2018

9   was a violation of the law.  In fact, I think it was the third

10  appearance before your Honor where there was an indication of

11  my client's desire to change his plea.  That is significant

12  from the standpoint of the quality of the acceptance of his

13  responsibility.

14         The Court can note certainly from the presentence

15  report, as well as the submissions by both myself and the

16  prosecutor, frankly, Judge, in terms of the history of the

17  defendant, certainly regarding his criminal background, but

18  also his personal background.

19         I'll reiterate, as I put in the sentencing

20  memorandum, the darkness essentially of the background that he

21  was raised in.  He was raised in a community of violence.  He

22  was raised somehow accepting that the possession of a gun --

23  or that his life was subject to constantly being in a

24  situation where he reflected the violence that was in the

25  community in which he was unfortunately raised.

1          What is fortunate, your Honor, is his family.  All of

2     them are in court today.  I would say all of them.  I will

3     specifically note that his parents are both in court.  His

4     fiancée is in court.  His two-year-old daughter is in court.

5     Multiple brothers and sisters are in court.  We indicated in

6     both the PSR as well as the -- our submission the large,

7     loving family that he has.  Some would consider that not

8     mitigating relative to the opportunities that he had to

9     conform his behavior to what the law requires.  What I will

10    say, your Honor, is that he is fortunate to have his family.

11    He's fortunate to have these people who love him.  He is

12    fortunate that on every court date we've been before your

13    Honor, these same people have been there.  I suggest that to

14    the Court because there is hope for this young man.

15          One of the things that I failed to mention in our

16    submission but was mentioned in the Probation's report was the

17    fact that since he has been incarcerated, he completed his

18    GED.  That is significant because I think it indicates to the

19    Court the potential that my client has to change his life.  He

20    is still a young man.

21          Your Honor, I will also mention that my client has,

22    predictably, turned to drugs in order to soothe much of the

23    pain that he's experienced in his life.  He is at this point

24    clean, as the Court might guess because of his incarcerated

25    status, but also he has further desire to employ and implement

1    programming that will allow him and teach him skills so as he

2    moves forward, once he's released from the Bureau of Prisons,

3    he will be able to change his patterns.  And I think that he

4    has shown during the brief period of time that he has been in

5    custody on this case that he will take advantage of those

6    opportunities.

7         What the defendant -- what Mr. Brown indicated to

8    Probation during his PSR is that his time in custody has given

9    him the ability to reflect, to reflect on the seriousness of

10   the charges, to reflect on the consequences of those choices,

11   how those choices affect his community, how they affect his

12   family, and how they prevent him from moving forward in a

13   manner in which he'd like to, which is to be a husband to his

14   future wife, a father to his child, and a good son to his

15   parents.

16        Your Honor, my client recognizes that he must be

17   sentenced.  We did ask for a below-guideline sentence here.  I

18   will not belabor that point, your Honor.  Your Honor certainly

19   has the ability to discern yourself as to what you deem to be

20   appropriate.  But, Judge, he does stand before you a young man

21   who will get out at some point, depending -- regardless of the

22   sentence; and it is our belief that there are tools in place

23   that will prevent him from ever being before this Court or any

24   court again based on participation in criminal conduct.  So

25   we'd ask for the Court's consideration in a reasonable

1    sentence for my client.

2              THE COURT:  Thank you.

3              Mr. Brown, you have an opportunity now to make a

4    statement if you wish to.  Sir, you are not required to make a

5    statement.  It will certainly not be held against you if you

6    do not.  But if there's something you wish to say, this is

7    your chance.

8              THE DEFENDANT:  I want to say that -- I'd like to

9    apologize to the courts and you, your Honor, for the problem;

10   and that I'm going to better myself as a man.  And you won't

11   see me in a courtroom no more on a bad note.

12             THE COURT:  Thank you.

13             The Court has reviewed the presentence investigation

14   report, the submissions of the parties.  I take into account

15   the representations and statements by the attorneys and the

16   defendant's statement as well.

17             So starting out with the offense itself, as the

18   government noted, the defendant was arrested as a passenger in

19   a vehicle that was stopped by the police.  Subsequent to the

20   stop, a semiautomatic firearm was found underneath the seat

21   cushion where the defendant was seated.  That firearm was

22   loaded with a 31-round large-capacity magazine which contained

23   ten live rounds.  In addition to that, there was an additional

24   round in the chamber.  Separate from that, there was a

25   50-round large-capacity drum magazine loaded with, I believe

1    it was, 22 rounds of ammunition for the firearm.  This was

2    found on the floor underneath the seat where the defendant was

3    seated.

4         As I look at these facts, it's clear to me that a

5    reasonable inference to be drawn from this set of facts --

6    that is, individuals driving around in a car with a gun with

7    over half a hundred rounds of ammunition available to them --

8    is that the defendant was apparently meant to be the shooter

9    in yet another Chicago-style drive-by shooting.  We've all

10   seen them on the news.  This is where perpetrators are armed

11   with semiautomatic weapons, spray bullets as fast as they can

12   as their car passes by their designated target; a drive-by

13   shooting.  The results of these drive-by shootings in the City

14   of Chicago have been disastrous.  As often as not, innocent

15   people are killed by stray bullets.  As often as not, children

16   are wounded or killed.  It seems almost every day that we have

17   some report of a shooting in the City of Chicago, on the

18   streets of the City of Chicago.  People have been injured

19   while passing the time in their front lawns, while watching

20   television inside their own living rooms.  Children have to be

21   walked to school through so-called "safe zones," which are not

22   safe, in order to protect them.

23        This kind of consistent, relentless violence causes

24   serious deterioration of entire neighborhoods and adversely

25   impacts the quality of life of thousands -- and tens of

1   thousands -- of people, innocent people who live in those

2   neighborhoods and are trying to get up, go to work, come home,

3   raise their families, and lead a decent life.  Conduct like

4   yours makes it impossible for them to do that.

5           A Chicago Police Department CompStat report shows

6   that so far this year, there have been 1,958 shooting

7   incidents in the City of Chicago.  Almost 2,000 shootings in

8   the City of Chicago in less than a year.  This level of

9   violence is intolerable.  No one should have to live in that.

10          In addition to that, unfortunately, this defendant

11  appears to be a poor candidate for rehabilitation.  He

12  committed this offense approximately seven months after

13  serving four years of an eight-year sentence of imprisonment

14  for armed robbery.

15          In spite of the fact that his siblings have been

16  killed and shot and that he himself has been shot on multiple

17  occasions, he appears to be unrepentant.  He's posted

18  photographs of firearms to social media, pictures of people

19  cuddling firearms as if they were babies.  Apparently, he not

20  only does not feel embarrassment or shame for what he has done

21  but feels that his association with firearms and firearm

22  violence is something to be proud of, to show to the world, to

23  boast about.  Nothing could be further from the truth.  You've

24  got it all wrong.  All wrong.

25          The presentence investigation report indicates that

1    at the age of 25, the defendant can report not more than seven

2    months of gainful employment, indicating instead that he is

3    supported by his parents and his girlfriend.

4         The entirety of his criminal history and his personal

5    characteristics makes it clear that at this point in time, he

6    has no clue.  He has no perceived intention of conforming his

7    conduct to the rules of society.  Instead, he poses a serious

8    and severe danger to those around him.  No one should have to

9    live with people like this defendant driving around their

10   neighborhoods in automobiles with half a hundred bullets and

11   guns to shoot them.  No one should have to live with that.

12        In addition, a prior imprisonment of 48 months was

13   totally insufficient to even delay, much less deter,

14   repetitive criminal conduct.  Any sentence below that would

15   seriously denigrate both the seriousness of the instant

16   offense and the need for punishment to deter future criminal

17   conduct.

18        For these reasons, a sentence above the guideline

19   range is absolutely necessary.  Such a sentence will promote

20   respect for the law and protect the public.

21        It is unfortunate, but the facts before me leave me

22   with no other choice and no other reasonable conclusion or

23   appropriate sentence than the sentence I'm about now to

24   describe that I intend to enter.

25        Pursuant to the Sentencing Reform Act of 1984, it is

 1  the judgment of the Court that this defendant, Antonio Brown,

 2  is hereby committed to the custody of the Bureau of Prisons to

 3  be imprisoned for a total term of 82 months on Count One.

 4        The Court recommends placement at a Bureau of Prisons

 5  facility that offers a residential drug abuse treatment

 6  program.

 7        The defendant is required to pay a $100 special

 8  assessment by statute.  However, the Court finds that he lacks

 9  the ability to pay a fine and, therefore, a fine will be

10  waived, as will the costs of incarceration and the costs of

11  supervision.

12        Upon release from imprisonment, he shall be placed on

13  supervised release for a term of three years.  Within 72 hours

14  of release from the custody of the Bureau of Prisons, the

15  defendant shall report in person to the probation office in

16  the district to which he is released.

17        I'm going now to list the mandatory, discretionary,

18  and special conditions of supervised release that I intend to

19  impose.  After I am done, I will give the parties an

20  opportunity to object to any of those conditions, seek

21  modifications, additions, or deletions.  Please listen

22  closely.

23        The defendant shall comply with the following

24  mandatory conditions of supervised release:

25        You shall not commit another federal, state, or local

1    crime.

2        No. 2, you shall not unlawfully possess a controlled

3    substance.

4        No. 5, you shall cooperate in the collection of a DNA

5    sample.

6        No. 6, you shall refrain from any unlawful use of a

7    controlled substance and submit to one drug test within

8    15 days of release on supervised release and at least two

9    periodic tests thereafter, up to 104 such tests during each

10   year of supervised release.

11       The Court intends to enter the following

12   discretionary conditions of supervised release:

13       Condition No. 1, you shall provide financial support

14   to any dependents, if you are financially able to do so.

15       Condition No. 4, you shall seek and work

16   conscientiously at lawful employment or, if you are not

17   gainfully employed, you shall pursue a course of study or

18   vocational training that will equip you for employment.

19       Condition No. 6, you shall not meet knowingly or

20   communicate knowingly with any person whom you know to be

21   engaged in or planning to be engaged in any criminal activity.

22       No. 7, you shall refrain from excessive use of

23   alcohol, which is defined as having a blood alcohol

24   concentration greater than 0.08 percent, and from any use of

25   narcotic drugs or other controlled substances without a

1   prescription by a licensed medical practitioner.

2          Condition No. 8, you shall not possess a firearm or

3   any other destructive or dangerous weapon.

4          Condition No. 9, you shall participate, at the

5   direction of the probation officer, in a substance abuse

6   treatment program, which may, as indicated above, include

7   urine testing up to a maximum of 104 tests per year.

8          Condition No. 14, you shall not knowingly leave the

9   federal district where you are being supervised unless granted

10  permission to leave by the Court or a probation officer prior

11  to doing so.

12         For your information, I will indicate that the

13  geographic area of the Northern District of Illinois, where

14  you currently reside, consists of the counties of Cook,

15  DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone,

16  Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson,

17  Whiteside, and Winnebago.

18         Condition 15, you shall report to a probation

19  officer, as directed by the Court or the probation officer.

20         Condition No. 16, you shall permit a probation

21  officer to visit you at any reasonable time at home, work,

22  school, or a community service location or any other

23  reasonable location specified by a probation officer; and you

24  shall permit confiscation of any contraband observed in plain

25  view by the probation officer during any such visit.

1          Condition No. 17, you shall notify a probation

2     officer within 72 hours after becoming aware of any change in

3     your residence, employer, or workplace and, absent

4     constitutional or other legal privilege, answer inquiries by

5     the probation officer in that regard.

6          You shall answer truthfully any inquiries by a

7     probation officer, subject only to any constitutional or other

8     legal privilege you may have.

9          Condition No. 18, you shall notify a probation

10    officer within 72 hours after being arrested, charged with a

11    crime, or questioned by a law enforcement officer for any

12    reason.

13         Condition No. 23, you shall submit your person,

14    property, house, residence, vehicle, papers, computers and

15    other electronic communications or data storage devices, or

16    your office to a search conducted by a United States probation

17    officer.  Failure to submit to a search may be grounds for

18    revocation of release.

19         You shall warn any other occupants of the premises

20    that you occupy that the premises may, by virtue of your

21    probationary status, be subject to searches pursuant to this

22    condition.

23         An officer may conduct such a search only when

24    reasonable suspicion exists that the defendant has violated a

25    condition of his supervision and that the areas to be searched

1    contain evidence of this violation.  Any such search must be

2    conducted at a reasonable time and in a reasonable manner.

3           The Court will enter four special conditions of

4    supervised release as well:

5           Condition No. 2 -- perhaps the most important

6    condition of all of them -- you shall participate in an

7    approved job-skill training program at the direction of a

8    probation officer within the first 60 days of placement on

9    supervision.

10          No. 3, you shall, if unemployed after the first

11   60 days of supervision or if unemployed for 60 days after

12   termination or layoff from employment, perform at least

13   20 hours of community service per week in lieu of employment,

14   at the direction of the probation office, until you once again

15   become employed.  Such community service shall not exceed

16   400 hours.

17          Condition No. 11, you shall not enter into any

18   agreement to act as an informer or special agent of a law

19   enforcement agency without the permission of the Court.

20          And condition No. 13 -- perhaps the second most

21   important condition of all that I have mentioned -- you shall

22   observe one reentry court session as instructed by your

23   probation officer.

24          I'll hear objections, questions, modifications with

25   respect to these conditions.

1    Defense?

2    MR. THEDFORD:  We raise no objections to those

3    conditions, your Honor.

4    THE COURT:  Government?

5    MR. SU:  No objections, your Honor.

6    THE COURT:  Is there a motion for a forfeiture in

7    this case?

8    MR. SU:  There is, your Honor.  It's already been

9    filed for a preliminary order.  We'd ask that you grant it and

10   include as part of the sentence in the judgment and commitment

11   order.

12   THE COURT:  Motion is granted.

13   MR. SU:  Your Honor, with respect to the sentence,

14   one of the chief rationales for mitigation I heard today and

15   in the papers is family support.  I interpret from your

16   Honor's remarks as well as the sentence that you considered

17   that factor and dismissed it as being insufficient to impose a

18   sentence below 82 months.  I just wanted to make sure that

19   understanding is correct.

20   THE COURT:  Well, thank you for your question,

21   counselor.  Let me be specific.

22   The defendant is fortunate to have such family

23   support.  It is extremely unfortunate that that support seems

24   to have been totally ineffective in keeping him from engaging

25   in repetitive, violent criminal conduct.  Neither that nor his

1    prior incarceration has had any effect on him whatsoever.  As

2    I indicated before, it is unfortunate, but these findings are

3    true based on the facts and as plain as can be.

4         Anything else?

5         MR. SU:  Not from the government.

6         THE COURT:  Was there a waiver of appellate rights?

7         MR. SU:  No, your Honor.

8         THE COURT:  Sir, it's my duty to advise you that you

9    can appeal your conviction if you believe that your guilty

10   plea was somehow unlawful or involuntary or if there is some

11   other fundamental defect in the proceedings that was not

12   waived by your guilty plea.

13        You also have a statutory right to appeal the

14   sentence itself under certain circumstances, particularly if

15   you think that the sentence is contrary to the law.

16        You have the right to apply for leave to appeal in

17   forma pauperis, which means without having to pay the fee that

18   is usually required, and the clerk of the court will prepare

19   and file a notice of appeal for you if you request it.

20        With few exceptions, any notice of appeal must be

21   filed within 14 days of the actual entry of the judgment I

22   have announced I intend to enter in this case.

23        Anything else?

24        MR. SU:  Not from the government, your Honor.

25        MR. THEDFORD:  No, your Honor.

1          THE COURT:  That's the Court's judgment.

2          MR. SU:  I apologize, your Honor.  The government

3     moves to dismiss the indictment in this case.

4          THE COURT:  This was a superseding information?

5          MR. SU:  Information, yes.

6          THE COURT:  Motion to dismiss the indictment is

7     granted.

8          MR. SU:  Thank you.

9          THE COURT:  Court is recessed.

10       (Which were all the proceedings heard.)

11                    *    *    *    *    *

12

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
14

15   _/s/ Nancy C. LaBella___                _February 13, 2020_
16   Official Court Reporter

17

18

19

20

21

22

23

24

25